IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DARRYL RIGGINS, AIS # 184051, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:16-00390-KD-MU |
| | ) |
| WALTER MYERS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

ORDER

This action is before the Court on the Motion for Summary Judgment filed by Defendants

Warden Walter Myers, Sergeant Emily Whittle, Lieutenant Regina Bolar and Captain Daryl Fails

and supporting affidavits and the response in opposition filed by Plaintiff Darryl Riggins and

supporting evidence. (Docs. 26, 28)  Upon consideration, and for the reasons set forth herein,

Defendants' motion is **GRANTED in part, and DENIED in part,** as set forth herein.

I. __Factual History__ [1]

In July 2014, Plaintiff Darryl Riggins was an inmate in the custody of the Alabama

Department of Corrections. He was housed at Holman Correctional Facility.  At all relevant

times, Walter Myers was the Warden at Holman and Sgt. Whittle,[2] Lt. Bolar, and Capt. Fails

were Correctional Officers employed at Holman. They were among the Correctional Officers

charged with supervision of Riggins. (Doc. 1)  Regina Hardy was a nurse at the Holman Health

---

[1] "Although the 'facts,' as accepted for purposes of summary judgment, may not be the actual facts of the case, 'our analysis ... must begin with a description of the facts in the light most favorable to the plaintiff' and our decision must accept those facts." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (citation omitted).

[2] Sgt. Whittle has not worked at the Holman Facility since early 2015. (Doc. 28-2, p. 9, Whittle Deposition)

Care Unit.[3]

Riggins alleges that in or around July of 2014, Sgt. Whittle gave him five cellular telephones. She instructed him to sell four phones to inmates on her behalf for five hundred dollars ($500) each. Riggins retained one phone for his personal use. (Doc. 1)

On July 27, 2014, Riggins wrote Warden Myers, Assistant Warden Gwendolyn Givens, Capt. Fails, and Lt. Bolar, as follows:

> Sgt. E. Whittle also gave me five (5) cell phones to sale (*sic*) for her … I'm suppose to keep one phone for myself and sale (*sic*) four (4) of them at the prison value of $500.00 a piece and bring Sgt. E. Whittle $2,000.00 back.

(Doc. 28-3)

Soon thereafter, in August 2014, Riggins was "disciplined for aiding Regina Hardy in violating the rules." (Doc. 1, p. 4)[4]  At his deposition, Riggins testified that Hardy was "caught" with contraband and accused of bringing the contraband to Riggins. (Doc. 28-1, Riggins Depo. p. 11-13)  Riggins denied any knowledge of the type of contraband or participation. However, he was found guilty of aiding and abetting and placed in disciplinary segregation for 45 days. (*Id*.)

In August, while Riggins was in segregation for this offense, prison officials confiscated the cell phones that Sgt. Whittle had given Riggins to sell.  Riggins testified that another inmate had hidden the cell phones for Riggins while he was in segregation. (Doc. 1, p. 4; Doc. 38-1, p. 11-13; Doc. 28-4)

At some time on or after September 23, 2014,[5] and after Riggins was released from

---

[3] Hardy has not worked at the Holman Facility since August 2015.

[4] Paragraph 13 of the Complaint could be read to indicate that Riggins was disciplined for the sexual contact with Hardy, discussed *infra*.  Riggins deposition testimony indicates otherwise.

[5] The letter is not dated.  However, Riggins references a meeting with a counselor on September 23, 2014.  Thus, the letter was sent at some time after that date.

segregation, Riggins wrote Warden Myers and the Investigations and Intelligence Division of the

ADOC (I&I), as follows:

> However, Sgt. Whittle also gave me 5 cell phones to sale (*sic*) for her at $500.00 each and I could keep one for myself but the cell phones were taken by the Riot Team in August and since I can't pay Sgt. Whittle, she has resulted to retaliation against me. I owe Sgt. Whittle $2,000.00.

(Doc. 28-4)

On or about October 31, 2014, Sgt. Whittle "accosted" him and demanded the payment

for the cell phones. Since Riggins did not have the money, Whittle slapped him in the face,

choked him and threatened him with further assaults if he did not get the money. (Doc. 1, p. 4)

Sgt. Whittle scratched the back of Riggins' neck during the assault. (Doc. 28, p. 14)[6] Riggins

reported Sgt. Whittle's conduct to Lt. Bolar but was not allowed to seek medical treatment. (Doc.

28-1, pp. 18, 20)

That same day, October 31, 2014, Riggins sent a handwritten complaint to Warden

Myers, Assistant Warden Givens, and Capt. Fails, as follows:

> Greetings, on October 31, 2014, Sgt. E. Whittle did choke and physically slap me in my face with an open palm when I told her I wouldn't be paying her the $2,000.00 I owed her for the five (5) cell phones she gave me in the month of July 2014 to sale four (4) and keep one for myself.
>
> Sgt. E. Whittle has been physically abusing me by hitting, slapping and choking and even threatening to have spray me with her mace and threatening to have me physically beaten by others. I'm afraid of this officer and fear for my safety around this officer.
>
> Would some please stop this officer from physically attacking /abusing me and threaten me with the same.

(Doc. 28-5)

Riggins alleges that the next day, November 1, 2014, Sgt. Whittle again confronted him

---

[6] Riggins testified that he was injured in his face and neck and that it hurt when Sgt. Whittle choked and slapped him. (Doc. 28-1, p. 19-21)

about payment for the cell phones. (Doc. 28-1, p. 29-30)  Riggins states that Sgt. Whittle only threatened him on this occasion and did not "do anything" or "beat" him that day. (*Id.*)

Concurrent with the events related to the five cell phones, Riggins alleges that Sgt. Whittle called him to the health care unit on three separate occasions during July 2014, for the purpose of having non-consensual sexual intercourse with Nurse Regina Hardy. (Doc. 1)  The last of the three incidents occurred on July 25, 2014.  Riggins testified that he "saw the money being transferred" from Hardy to Sgt. Whittle; "$100.00 each time." (Doc. 1; Doc. 28-1, p. 14)

On July 27, 2014, Riggins wrote to Warden Myers, Assistant Warden Givens, Capt. Fails, and Lt. Bolar about the incidents, stating that "[t]his is my third complaint and nothing has been done to stop this sexual abuse. Would someone please stop this abuse and get me the proper medical treatment and allow me to talk to I&I Investigator[.]" (Doc. 28-3) Riggins did not provide any letters or documents to support his first two complaints. Riggins also wrote that Hardy had given him her panties on July 25, 2014. (*Id.*)

On August 19, 2014, Riggins reported the sexual assault to I&I and gave the panties to the Investigator. (Doc. 28-4)  At some time after September 23, 2014, Riggins wrote to Warden Myers and I&I, to complain about the sexual assault of July 25, 2014 and the sexual assaults "on two other occasions before that." (Doc. 28-4)  He also wrote that the mental health counselor he spoke with on September 23, 2014, "seems to think it's something to play about." (Doc. 28-4).He alleges that the Investigator found that the sexual contact was substantiated. (Doc. 1, p. 4)[7]

---

[7] The Court takes judicial notice of a similar action previously before the Court. Specifically, *Riggins v. Corizon, Inc., et al.*, Civil Action No. 14-00542-KD-N (S.D. Ala. 2014). The pro se action was dismissed without prejudice as malicious pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and counted as a strike pursuant to 28 U.S.C. § 1915(g) (*Id*., Doc. 9, Report and Recommendation; Doc. 13, Order; Doc. 14, Judgment). However, Riggins provided a copy of the State of Alabama Department of Corrections' Investigative Results dated August 12, 2015. The Investigator found that Riggins' complaint was "substantiated", that "[t]he staff member is no longer employed at the facility" and that "[t]he staff member has been indicted on a charge (Continued)

## II. <u>Procedural History</u>

On July 20, 2016, Riggins filed the instant complaint against Warden Myers, Sgt. Whittle, Capt. Fails, Lt. Bolar and Nurse Hardy. (Doc. 1) Pursuant to 42 U.S.C. § 1983, Riggins brings five counts wherein he alleges violations of the Eighth Amendment's prohibition against cruel and unusual punishment.

In Count 1, Riggins alleges that Sgt. Whittle subjected him to cruel and unusual punishment in violation of the Eighth Amendment. Specifically, Riggins alleges that Sgt. Whittle acted with deliberate indifference to his constitutional rights by forcing him to have sex with Nurse Hardy and by assaulting and threatening him regarding payment for the cell phones.

In Count II, Riggins alleges that Capt. Fails and Lt. Bolar violated their "Eighth Amendment duty to make safe[.]" (Doc. 1)  Riggins alleges that these Defendants, with supervisory authority over Sgt. Whittle, had knowledge of the sexual assaults and physical assaults, *i.e.*, an excessive risk to Riggins' health and safety, but disregarded the known risk, and did not take any action to protect him.  He alleges that they acted with deliberate indifference to a known risk, and therefore, subjected him to cruel and unusual punishment.

In Count III, Riggins alleges "supervisory liability" as to Capt. Fails and Lt. Bolar based on their supervision of Sgt. Whittle. He alleges that they knew of the sexual assaults and physical assaults regarding the cell phones, but breached their duty to intervene and stop the assaults. Riggins alleges that these Defendants acted with deliberate indifference to a known risk, and violated his Eighth Amendment right not to be subjected to cruel and unusual punishment.

In Count IV, Riggins alleges that Warden Myers, Capt. Fails, and Lt. Bolar failed to provide protective measures. He alleges that these defendants had supervisory authority over Sgt.

---

related to sexual abuse." (*Id.*, Doc. 16, p. 5)

Whittle and knew of the sexual assaults and physical assaults and threats regarding the cell phones because of his "written complaints of July 25, 2014 and October 31, 2014, among others[.]" (Doc. 1)  Riggins alleges that these Defendants failed to implement any procedures to protect him from Whittle; and therefore, they acted with deliberate indifference to a known risk, and subjected him to cruel and unusual punishment.

In Count V, Riggins alleges that Warden Myers and Capt. Fails, in their official capacities, failed to provide protective measures.  He alleges that they knew of the risk of harm created by the trade in contraband cell phones because of a 2011 riot at Holman that occurred when contraband cell phones were confiscated.  He also alleges that they knew that cell phones were being brought into Holman as early as 2011, but disregarded this known risk to inmate safety by failing to implement any procedures to protect the inmates. Riggins alleges that this lack of protective measures resulted in the physical assault by Whittle, i.e. cruel and unusual punishment.

Riggins also brings two counts under state law. In Count VI, Riggins claims negligence against Warden Myers, Capt. Fails, Sgt. Whittle.[8]  He alleges that Warden Myers, Capt. Fails and Sgt. Whittle had a duty to maintain a safe and secure environment and a duty to promptly report or investigate complaints of sexual misconduct or physical abuse by the correctional staff, but breached that duty.  He also alleges that Sgt. Whittle had a duty not to subject him to sexual and physical abuse, but breached that duty.  In Count VII, Riggins claims assault and battery against Sgt. Whittle for slapping and choking him on October 31, 2014 and November 1, 2014.

## III. Conclusions of Law

### A. Summary Judgment Standard

---

[8] The claim was also asserted against Regina Hardy, who has now been dismissed from this action.

Pursuant to Rule "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment bears the "initial responsibility of informing the district court of the basis for [their] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [they] believe[] demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11ᵗʰ Cir. 1991) (bracketed text added) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party does not have the burden of proof at trial, they may show that "there is an absence of evidence to support the nonmoving party's case." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (citations omitted). Alternatively, the moving party may support its "motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* If the moving party meets this burden, the non-movant, as the party bearing the burden of proof at trial, must set forth specific facts, supported by citation to the evidence, to support the elements of the case at trial, and therefore, establish that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986).

Overall, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003). "[A]ll reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant." *Citizens Trust Bank v. Lett*, 2015 WL 4254561, at *1 (N.D.Ala. 2015). The Court is obligated to construe the record, including all evidence and factual inferences, in the light most favorable to the

nonmoving party. *See Skop v. City of Atlanta,* 485 F.3d 1130, 1136 (11th Cir. 2007).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Bd. of Public Education for Bibb County,* 495 F. 3d 1306, 1313 (11th Cir. 2007).

**B. Eighth Amendment claims brought pursuant to 42 U.S.C. § 1983**

"In order for a plaintiff to establish a claim under 42 U.S.C. § 1983, he must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." *Martinez v. Burns*, 459 Fed.Appx. 849, 850–851 (11th Cir. 2012) (citing *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005)). The parties do not dispute that Defendants, as correctional officers for the State of Alabama were acting under color of law.

"The Eighth Amendment, applicable to the states through the Fourteenth Amendment, governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison." *Id*. (citing *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003); *Bass v. Perrin*, 170 F.3d 1312, 1316 (11th Cir. 1999)). The Amendment states that "[e]xcessive bail shall be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. " '[T]he unnecessary and wanton infliction of pain ... constitutes cruel

and unusual punishment forbidden by the Eighth Amendment.' " *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078 (1986) (some internal quotation marks omitted). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 2399 (1981).

For prisoners, "[t]he Eighth Amendment can give rise to claims challenging specific conditions of confinement, the excessive use of force, and the deliberate indifference to a prisoner's serious medical needs." *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010) (citations omitted). Additionally, "[b]eyond just restraining prison officials from inflicting 'cruel and unusual punishments' upon inmates, '[t]he Amendment also imposes duties on these officials, who must ... "take reasonable measures to guarantee the safety of the inmates." ' " *Bowen v. Warden Baldwin State Prison*, 826 F.3d 1312, 1319–20 (11th Cir. 2016 (quoting *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S. Ct. 3194 (1984)).

## C. Analysis

### 1. Qualified Immunity

In order to receive qualified immunity, Defendants "must first show they were performing a discretionary function" i.e., acting within their discretionary authority. *Johnson v. Boyd*, - - - Fed. Appx. - - -, 2017 WL 2963449, at *4 (11th Cir. July 12, 2017). If they do, the burden shifts to Riggins to show that qualified immunity should not apply. *Id.*; *see also Bowden v. Stokely*, 576 Fed. Appx. 951, 954 (11th Cir. 2014) (per curiam) (assessing qualified immunity with respect to Bowden's allegation of excessive force). To meet his burden, Riggins must show that Defendants violated a constitutional right, and that the right was clearly established at the time of the violation. *Johnson v. Boyd*, 2017 WL 2963449, at *4; *Bowden*, 576 Fed. Appx. at 954. The Court may consider the two prongs in either order, and Defendants are entitled to

qualified immunity if Riggins fails to establish either one. *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009).

"Qualified immunity protects ... officers from liability in § 1983 actions as long 'as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Wells v. Talton*, - - - Fed. Appx. - - -, 2017 WL 2334321, at *3 (11th Cir. May 30, 2017) (citing *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982)). Riggins may "show that a constitutional right was clearly established in three different ways: '(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Hill v. Orange Cty. Sheriff*, 666 F. Appx. 836, 839 (11th Cir. 2016) (quoting *Lewis v. City of W. Palm Beach*, 561 F.3d at 1291-1292)).

In an Eighth Amendment excessive force case, "'the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution." *Bowden*, 576 Fed. Appx. at 954–955 (quoting *Johnson v. Breeden*, 280 F.3d 1308, 1321–22 (11th Cir.2002)).

**a). <u>Sgt. Whittle</u>**

With respect to discretionary authority, Sgt. Whittle must show that she was performing a legitimate job-related function, through means that were within her power to utilize. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). The Court must inquire "whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties." *Harbert Int'l v. James*, 157

10

F.3d 1271, 1282 (11th Cir. 1998)). Therefore, the Court must look to Sgt. Whittle's individual discretionary duties as a correctional officer.

Sgt. Whittle argues that she was acting within her discretionary authority because "[e]verything alleged in the Complaint describes the defendants doing what correctional officials do: supervising and controlling inmates, except for the allegation of sexual abuse which is merely a conclusory allegation." (Doc. 26, p. 7) In response, Riggins argues that "nothing about" Sgt. Whittle's "job as a correctional officer would allow her to accept money from someone and direct an inmate to have sex with that person in return for the money." (Doc. 28, p. 6) Riggins also argues that slapping and choking an inmate does not "fall[ ] within the job description of a correctional officer." (*Id.*)

The Court agrees with Riggins. Sgt. Whittle exceeded the scope of her discretionary authority when she allegedly brought the contraband cell phones to Riggins, directed him to sell four on her behalf and keep one for himself, and then assaulted him when he did not have the money. She also exceeded the scope of her discretionary authority when she allegedly arranged the sexual contact with Nurse Hardy and profited from the arrangement. Viewing the facts in the light most favorable to the non-movant,[9] the allegations regarding sexual abuse are not conclusory and the acts described do not show that Sgt. Whittle was performing legitimate job-related functions in an authorized manner. "While ... there is no per se rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate." *Bowden,* 576 Fed. Appx. at 956 (citing *Skrtich v. Thornton*, 280

---

[9] Defendant Sgt. Whittle fails to cite to evidence or make any factual arguments in support of her motion, rather Sgt. Whittle references that her Affidavit is attached. (Doc. 26, p. 3) The Affidavit simply denies the allegations.

F.3d 1295, 1301 (11th Cir. 2002)). Accordingly, the Court finds that Sgt. Whittle is not entitled to qualified immunity. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) ("If the defendant was not acting within his discretionary authority, he is ineligible for the benefit of qualified immunity."). Therefore, Sgt. Whittle's motion is **DENIED**.

### b. Defendants Warden Myers, Capt. Fails and Lt. Bolar

Defendants Warden Myers, Lt. Bolar, and Capt. Fails argue that they are entitled to the defense of qualified immunity as to any claim against them in their individual capacity brought pursuant to 42 U.S.C. § 1983. (Doc. 26, p. 4-8)  They argue that they were acting within their discretionary authority because "[e]verything alleged in the Complaint describes the defendants doing what correctional officials do: supervising and controlling inmates, except for the allegation of sexual abuse which is merely a conclusory allegation." (Doc. 26, p. 7)

In his Complaint, Riggins alleges that these Defendants, in their respective positions, had supervisory authority over Sgt. Whittle. He also alleges that they had notice of the sexual assaults and the assaults and threats related to the contraband cell phones because he sent three hand-written complaint letters. Riggins further alleges that they failed to take any action to protect him; and therefore, were deliberately indifferent to a known risk to his safety. (Doc. 1)

Riggins allegations support a finding that Defendants were acting within their discretionary authority. Riggins alleges that they failed to protect him from Sgt. Whittle after receiving his hand-written complaint letters regarding her conduct. "[T]o pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description." *Holloman ex rel. Holloman v. Harland*, 370 F.3d at 1266. A supervisory officials' receipt of inmate complaints regarding the conduct of the correctional officers they supervise and decision whether to take action is a legitimate job-related function.

The burden now shifts to Riggins to show that Warden Myers, Capt. Fails and Lt. Bolar's "conduct violated a statutory or constitutional right that was clearly established when the alleged violation occurred." *Jackson v. Smith*, - - - Fed. Appx. - - -, 2017 WL 1192198, at *3 (11th Cir. Mar. 31, 2017).

As to the claim that Myers, Fails and Bolar failed to protect Riggins from the sexual abuse, Riggins concedes that these Defendants did not have knowledge of the sexual abuse. (Doc. 28, p. 11)  Riggins concedes an element of the claims in Counts II, III and IV upon which he has the burden of proof at trial. Specifically, he must show both that the Defendants actually subjectively knew of the sexual assaults and disregarded the risk of harm to Riggins by failing to respond in an objectively reasonable manner, i.e., protect Riggins and stop the sexual assaults. Thus, because Riggins cannot establish a constitutional violation, Warden Myers', Capt. Fails' and Lt. Bolar's motion for qualified immunity as to these claims is **GRANTED**.

The Court looks next to whether Riggins can establish a violation of a constitutional right based on Defendants' failure to protect him from Sgt. Whittle's physical assaults.  A "prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culver,* 746 F. 3d. 1288, 1298 (11th Cir. 2014). The parties do not dispute that Warden Myers, Capt. Fails and Lt. Bolar had supervisory authority over Sgt. Whittle, therefore, they are liable under § 1983 either when they personally participate in the alleged constitutional violation or when there is a causal connection between their actions as supervising officials and the alleged constitutional violation. *McNeeley v. Wilson*, 649 Fed. Appx. 717, 724 (11th Cir. 2016) (quoting *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (quotation omitted).  "A causal connection may be established when: 1) a 'history of widespread abuse' puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in

deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor

directed subordinates to act unlawfully or knew that subordinates would act unlawfully and

failed to stop them from doing so." *Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006)

(citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)); *Rachel v. City of Mobile, Ala.*,

2014 WL 4662324, at *2 (S.D. Ala. Sept. 18, 2014) (same).

"Deliberate indifference in the context of a failure to prevent harm has a subjective and

an objective component, i.e., a plaintiff must show both 'that the defendant actually

(subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm" and "that the

defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable

manner.'" *Bowen,* 826 F.3d at 1320 (bracketed text in original) (citation omitted).  Subjective

knowledge requires that Defendants "must both be aware of the facts from which the inference

could be drawn that a substantial risk of serious harm exists, and [they] must also draw the

inference." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting

*Farmer*, 511 U.S. at 837).

As to qualified immunity from Riggins' supervisory liability claims, Defendants argue

that "[s]imply put there is no evidence of a causal connection between these Defendants and

Inmate Riggins." (Doc. 26, p. 8)[10]

Riggins argues that the complaint letters he gave to Warden Myers, Capt. Fails, and Lt.

Bolar show that they had actual knowledge of the substantial risk of harm but failed to protect

him.

With respect to Lt. Bolar, the only complaint letter addressed to her was sent on July 24,

---

[10] Defendants fail to make any factual arguments in support of their motion for qualified immunity. Rather they simply reference that their Affidavits are attached. (Doc. 26, p. 3)   In the Affidavits each Defendant denies that they received Riggins' complaints regarding Sgt. Whittle.

2014. Riggins wrote to Warden Myers, Capt. Fails and Lt. Bolar, as follows:

> Sgt. E. Whittle also gave me five (5) cell phones to sale (*sic*) for her … I'm
> suppose to keep one phone for myself and sale (*sic*) four (4) of them at the prison
> value of $500.00 a piece and bring Sgt. E. Whittle $2,000.00 back.

(Doc. 28-3)  However, after the alleged October 31, 2014 assault by Sgt. Whittle, Riggins claims
he immediately informed Lt. Bolar of the assault. (Doc. 28-1, p. 29)  Riggins also states that
when Sgt. Whittle threatened him again the next day, Lt. Bolar responded by moving him to a
cell away from Sgt. Whittle. (*Id.*)

Construing the evidence in the light most favorable to the non-movant Riggins, the Court
finds that he has not met his burden. Assuming that Lt. Bolar received and read the complaint
letter, the facts therein are not sufficient to support an inference that there was a substantial risk
of serious harm to Riggins.  Moreover, even if Riggins could show that Lt. Bolar was
deliberately indifferent to his report of the assault on October 31, 2014, Riggins has failed to
establish a constitutional violation as to Lt. Bolar because he has shown no injury as a result.
Riggins states that he was only threatened on November 1, 2014, and that no physical assault
occurred.  Therefore, Lt. Bolar's motion for qualified immunity is **GRANTED**.

With respect to Capt. Fails, two of the complaint letters were addressed to him.  He was
sent the letter of July 24, 2014 and the letter of October 31, 2014, which was sent after the first
assault occurred.  The letter sets forth as follows:

> Greetings, on October 31, 2014, Sgt. E. Whittle did choke and physically slap me
> in my face with an open palm when I told her I wouldn't be paying her the
> $2,000.00 I owed her for the five (5) cell phones she gave me in the month of July
> 2014 to sale (*sic*) four (4) and keep one for myself.
>
> Sgt. E. Whittle has been physically abusing me by hitting, slapping and choking
> and even threatening to have spray me with her mace and threatening to have me
> physically beaten by others. I'm afraid of this officer and fear for my safety
> around this officer.
>
> Would some one please stop this officer from physically attacking /abusing me
> and threaten (*sic*) me with the same.

15

(Doc. 28-5)

Construing the evidence in the light most favorable to the non-movant Riggins, the Court finds that he has not met his burden. First, there is an issue of fact as to whether Capt. Fails received and read the two complaint letters. But assuming he did, the July 24, 2014 letter was not sufficient to put Capt. Fails on notice that Riggins was facing a substantial risk of serious physical harm from Sgt. Whittle. And as to the October 31, 2014 letter, even if Capt. Fails was deliberately indifferent to Riggins' report of the assault on October 31, 2014, Riggins has failed to establish a constitutional violation as to Capt. Fails because he has shown no injury as a result. Riggins states that he was only threatened on November 1, 2014, and that no physical assault occurred. Therefore, Capt. Fails' motion for qualified immunity is **GRANTED**

With respect to Warden Myers, all three of the complaint letters were addressed to him. He was sent the letter of July 24, 2014, the letter of October 31, 2014, and another letter, which was sent at some time after September 23, 2014. That letter sets forth as follows:

> However, Sgt. Whittle also gave me 5 cell phones to sale (*sic*) for her at $500.00 each and I could keep one for myself but the cell phones were taken by the Riot Team in August and since I can't pay Sgt. Whittle, she has resulted to retaliation against me. I owe Sgt. Whittle $2,000.00.

(Doc. 28-4)

Riggins also provides the Court with Warden Myers' deposition testimony. Riggins points out that Warden Myers testified that the presence of cell phones in prison creates a threat of harm to inmates and staff because inmates fight over the phones. He also points out that Warden Myers testified that problems exist with staff members bringing in contraband cell phones. (Doc 28, p. 12; Exh. F, Doc. 28-6)

Construing the evidence in the light most favorable to the non-movant Riggins, the Court finds that he has not met his burden. First, there is an issue of fact whether Warden Myers

received and read the three complaint letters. However, assuming that he did, neither the July 24, 2014 letter, nor the September 23, 2014 letter are sufficient to put Warden Myers on notice that Riggins was facing a substantial risk of serious physical harm from Sgt. Whittle. Although Riggins refers to "retaliation" from Sgt. Whittle, such description is too ambiguous to show that Warden Myers had actual knowledge of a substantial risk of serious physical harm from Sgt. Whittle. *See Terry v. Bailey*, 376 Fed. Appx. 894, 896 (11th Cir. 2010) ("The known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference.") (citation and quotations omitted). As to the fact that Warden Myers knew cell phones caused problems between prisoners, such is irrelevant since that is not the harm to which Riggins was subjected. And as to the October 31, 2014 letter, even if Warden Myers was deliberately indifferent to Riggins report of the assault on October 31, 2014, Riggins has failed to establish a constitutional violation as to Warden Myers because he has shown no injury as a result. Riggins states that he was only threatened on November 1, 2014, and that no physical assault occurred. Therefore, Warden Myers' motion for qualified immunity is **GRANTED**.

### 2.  Count V against Warden Myers and Capt. Fails in their official capacity

Riggins alleges that Warden Myers and Capt. Fails, in their official capacity, knew of the risk of harm presented by the trade in contraband cell phones, disregarded that risk by failing to implement procedures to protect the inmates, and their failure caused the violation of his "Eighth Amendment right not to be subjected to cruel and unusual punishment at the hands of Whittle." (Doc. 1, p. 7-8, Count V) Riggins attributes knowledge of the risk to Warden Myers and Capt. Fails because of an April 2011 prison riot at Holman that occurred when contraband cell phones were confiscated.

In the motion for summary judgment, Defendants argue that Warden Myers and Capt.

Fails are entitled to immunity from suit under the Eleventh Amendment. (Doc. 26, p. 9)
Defendants raised this argument in one sentence - "The law is well settled that the Defendants
are entitled to Eleventh Amendment immunity in their official capacity" - embedded in the
section captioned "Failure to Protect/Intervene" which addressed Riggins' claims related to the
sexual abuse. (Doc. 28, p. 8-9)  Defendants did not support this argument with any analysis of
the relevant facts and law.  *See* S.D. Ala. CivLR 56(a).

However, it is well settled that the Eleventh Amendment bars § 1983 claims for monetary
damages against the state or an agency of the state. *Gafford v. Dunn*, 2016 WL 7650680, at *4
(N.D. Ala., Dec. 8, 2016) (slip copy) (report and recommendation adopted, *Gafford v. Dunn*,
2017 WL 57428 (N.D. Ala., Jan. 5, 2017) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). Unless
there has been a "legitimate abrogation of immunity by Congress or a waiver of immunity by the
state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a
state or its agencies in federal court." *Id.* (quoting *Gamble v. Florida Dept. of Health &
Rehabilitative Services,* 779 F.2d 1509, 1511 (11th Cir. 1986)).  Eleventh Amendment immunity
may also apply to certain equitable forms of relief, "if the relief in essence requires a state to
expend money to compensate for past action" but "the Eleventh Amendment does not apply to
actions against state actors for purely prospective injunctive relief, even if that relief may have an
ancillary effect on state treasuries." *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 666 (1974) and
*Ex Parte Young*, 209 U.S. 123 (1908)).

Under the exception to Eleventh Amendment immunity recognized in *Ex parte Young,*
the courts may allow "suits against state officers seeking prospective equitable relief to end
continuing violations of federal law." *Id.* (citation omitted). Riggins seeks equitable relief in the
form of a requirement that Defendants take "affirmative action" in the future to discontinue their
"unconstitutional and unlawful act, policies, or practices." (Doc. 1, p. 10, ¶ 37)  However,

Riggins did not respond to Defendants' argument and therefore, did not provide any evidence that Warden Myers and Capt. Fails continue to fail to provide protective measures as to contraband cell phones, such that prospective equitable relief might be appropriate. Accordingly, summary judgment is **GRANTED** in favor of Defendants Warden Myers and Capt. Fails as to Riggins' § 1983 claims against them in their official capacity (Count V).

### 3. Heightened pleading standard

Defendants argue that Riggins' complaint is due to be dismissed for "failing to comply with Rule 8 of the Federal Rules of Civil Procedure, as well as the Eleventh Circuit's heightened pleading requirements for § 1983 actions." (Doc. 26, p. 10-11) In support, Defendants argue that the "complaints are solely based upon the naming of a United States Supreme Court case and an attached newspaper article. Such is not sufficient to put the Defendants on notice of an alleged violation. The complaint is not accompanied by a single affidavit from the Plaintiff or anyone else." (*Id*.) Defendants also allege that "there is no claim that the alleged Defendants have caused, or that they will cause, any injury." (*Id*.)

Review of the Complaint indicates that no Supreme Court case was cited, no newspaper article was attached, and Riggins did allege that Defendants had caused injury; specifically sexual assaults and physical assaults. (Doc. 1) Therefore, this argument does not appear to be directed toward the Complaint actually filed in this action. Accordingly, summary judgment is **DENIED** as to any claim that the Complaint fails to meet the requirements of Rule 8.

As to the heightened pleading standard, Defendants cite to *Harper v. Lawrence County*, 592 F. 3d 1227 (11th Cir. 2010) as support for their argument. *Harper* was decided in January 2010. Later that year, in June 2010, the Court of Appeals for the Eleventh Circuit explained as follows:

While *Swann, GJR,* and *Danley* reaffirm application of a heightened pleading

standard for § 1983 cases involving defendants able to assert qualified immunity, we agree with Randall that those cases were effectively overturned by the *Iqbal* court. Pleadings for § 1983 cases involving defendants who are able to assert qualified immunity as a defense shall now be held to comply with the standards described in *Iqbal*. A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth-legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief.

Regarding the order at issue here, two days after *Iqbal* was decided, the district court granted Scott's motion to dismiss employing a "heightened pleading standard." R1-18 at 6. We conclude that the district court erred in applying a heightened pleading standard to Randall's complaint. After *Iqbal* it is clear that there is no "heightened pleading standard" as it relates to cases governed by Rule 8(a)(2), including civil rights complaints. All that remains is the Rule 9 heightened pleading standard.

*Randall v. Scott*, 610 F.3d 701, 709-710 (11th Cir. 2010).

Accordingly, because there is no "heightened pleading standard" requirement, summary judgment is **DENIED** as to any claim that Riggins' civil rights Complaint fails to meet the "heightened pleading standard."

### 4. Standing

In one sentence, Defendants argue that "this Court lacks subject matter jurisdiction over Riggins' claims." (Doc. 26, p. 11)  In support, they set out the elements to establish standing as developed in *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992). Riggins argues that he has standing to bring this action because the three sexual assaults facilitated by Sgt. Whittle and the physical assault also by Sgt. Whittle, result in an injury that is sufficiently concrete, real, and particularized to meet the low threshold for standing. (Doc. 28, p. 13-14)

Again, Defendants did not provide the Court with any analysis as to how Riggins failed to meet the elements and consequently, failed to establish that he has standing to proceed.  The

Court will not make Defendants' argument for them and this argument appears to be without any merit. Accordingly, Defendants' motion for summary judgment based upon their argument that this Court lacks subject matter jurisdiction is **DENIED**.

**5. <u>Respondeat Superior or Vicarious Liability</u>**

Defendants argue that it is "well settled that 'supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.'" (Doc. 26, p. 12)  Riggins did not oppose this argument. Instead, Riggins points out that a supervisor may be liable under § 1983 when there is a causal connection between the actions of the supervisor and the alleged constitutional violation. (Doc. 28, p. 17)

Riggins' complaint does not appear to allege claims against the Defendants based on either respondeat superior or vicarious liability. (Doc. 1)  And again, Defendants raised this argument in one sentence, without any analysis of the relevant facts and law.

However, Defendants correctly argue that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Ross v. Corizon Medical Services,* - - - Fed. Appx. - - -, 2017 WL 2829071, *3 (11th Cir. 2017).  Thus, to the extent that Riggins may have alleged such a claim, summary judgment is **GRANTED** in favor of Defendants Warden Myers, Capt. Fails, and Lt. Bolar (the only Defendants alleged to have supervisory authority).

**6. <u>Count I against Sgt. Whittle</u>**

In Count 1, Riggins alleges that Sgt. Whittle subjected him to cruel and unusual punishment in violation of the Eighth Amendment. Specifically, Riggins alleges that Sgt. Whittle acted with deliberate indifference to his constitutional rights by forcing him to have sex with Nurse Hardy and by physically assaulting and threatening him regarding payment for the cell phones.

Defendant Sgt. Whittle argues that summary judgment is due to be granted in her favor because Riggins has failed to produce any evidence to support his claim that she used excessive force by slapping and choking him. Sgt. Whittle alleges that there "is no evidence that" she "used any force whatsoever" and that "[w]ithout any such evidence except for [Riggins] conclusory allegations" his claim must fail. (Doc. 26, p. 14). Alternatively, Sgt. Whittle argues that if some force was used, it was not excessive, but instead de minimis. (*Id.*, p. 13-14)

Riggins argues that the inquiry is not the level of injury, but "whether the force was applied 'maliciously and sadistically rather than as a part of a good-faith effort to maintain or restore discipline.'" (Doc. 28, p. 17) Riggins also argues that Sgt. Whittle's "gratuitous violence . . . visited upon Mr. Riggins over the cell phones" was not for "any legitimate penological need" but instead was "done maliciously and sadistically." (Doc. 28, p. 16, 18)

" '[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.' " *Hudson v. McMillian*, 112 S.Ct. 995, 998, 503 U.S. 1, 5 (1992) (citations omitted). Therefore, the "Eighth Amendment prohibits prison officers from using excessive force against prisoners." *Pearson v. Taylor*, 665 Fed.Appx. 858, 863 (11th Cir. 2016) (citing *Thomas v. Bryant,* 614 F.3d at 1303–04). Thus, "[t]he 'core judicial inquiry' for an excessive-force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175 (2010) (quoting *Hudson v. McMillian*, 503 U.S. at 7). "The Supreme Court has 'rejected the notion that "significant injury" is a threshold requirement for stating an excessive force claim.'" *Id.* "Thus, while *de minimis* uses of force, absent exceptional circumstances, do not violate the constitution, *de minimis* injury does not necessarily bar a prisoner's excessive-force claim." *Id.* (citing *Wilkins v. Gaddy,* 559 U.S. at 37–38). "The extent of injury remains a relevant consideration and may provide an indication of the

amount of force applied, but '[i]njury and force ... are only imperfectly correlated, and it is the latter that ultimately counts.'" *Id*.

The Court of Appeals for the Eleventh Circuit has "identified five factors to help evaluate whether force was applied maliciously or sadistically." *Id.* (citing *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010)): "(1) the need for force; (2) the relationship between that need and the amount of force used; (3) the extent of the resulting injury; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to that official; and (5) any efforts made to temper the severity of the use of force." *Id.* (citations omitted).

As to the first and second factor, Sgt. Whittle raises no argument that she applied force to Riggins in a good faith effort to maintain or restore discipline. Instead, Sgt. Whittle argues that "[t]here is no evidence that" she "used any force whatsoever." (Doc. 26, p. 14)  Sgt. Whittle submitted a denial of Riggins' claims in the form of an Affidavit. (Doc. 26-5)  Clearly, there is an issue of fact that must be resolved by a fact-finder, not the Court.

As to the third factor, the extent of the resulting injury, Sgt. Whittle argues that Riggins failed to show more than a de minimis injury – "one small scratch to the back of his neck" and that evidence of a de minimus injury is evidence of de minimis force. (Doc. 26, p. 13)  However, Riggins does not lose his "his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Pearson v. Taylor*, 665 Fed.Appx. at 863. The inquiry is not the degree of injury, but why the force was applied. In *Hudson v. McMillian*, the Supreme Court explained that "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident." 503 U.S. at 7.

As to factors four and five, there is no evidence that Riggins presented a "threat to the safety of staff and inmates" when Sgt. Whittle allegedly approached him regarding payment for the cell phones, nor is there any evidence that Sgt. Whittle tempered the severity of the use of force.[11] *Pearson v. Taylor*, 665 Fed.Appx. at 863.

Thus, applying these factors, and resolving "all issues of material fact in favor of" Riggins as the non-movant the Court finds that Sgt. Whittle is not entitled "to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d at 1288. Accordingly, summary judgment is **DENIED** as to Count I, and this claim remains for trial.

Sgt. Whittle did not raise any argument as to Riggins' allegations in Count I that she violated his constitutional rights by facilitating the sexual assaults by Nurse Hardy.[12] Accordingly, no order is made as to this claim against Sgt. Whittle, and this claim remains for trial.

### 7. Prison Litigation Reform Act

Defendants argue that summary judgment should be granted under the Prisoner Litigation Reform Act, 42 U.S.C. § 1997, because Riggins does not have the requisite physical injury under the PLRA to bring this § 1983 action. Specifically, they argue that 42 U.S.C. § 1997e(e) precludes Eighth Amendment claims unless the physical injury is more than *de minimis.* (Doc. 26, p. 16)

Riggins argues that there are two distinct constitutional violations alleged: The sexual

---

[11] An immediate offer of medical assistance may show an effort to temper the severity of the response. *Fennell v. Gilstrap*, 559 F.3d 1212, 1220 (11th Cir. 2009) (per curiam). Riggins testified that Sgt. Whittle refused his request to go to the Infirmary. (Doc. 28-1, p. 20-21)

[12] In her affidavit, Sgt. Whittle denied the allegations, but counsel failed to make any argument on her behalf, and such argument would not have been well-taken in the face of Riggins' contradictory evidence.

assaults and Sgt. Whittle's assaults regarding the contraband cell phones. (Doc. 28, p. 5)  Riggins

argues that sexual assault or sexual abuse is listed in 42 U.S.C. § 1997e(e) as an exception to the

need to show a physical injury. (*Id.*)  He also argues that a serious or significant physical injury

is not always required by the PLRA for an Eighth Amendment claim, but rather the inquiry is

whether the use of force was for a legitimate penological purpose or maliciously and sadistically

to cause harm.  Riggins argues that the assault regarding payment for the cell phones falls under

the latter, and since there was no legitimate purpose, any force applied to him, even force that

results in a *de minimis* injury, is excessive. (Doc. 28, p. 15-16)  Overall, Riggins points out that §

1997e(e), "operates not to preclude suit, but to limit the damages recoverable." (Doc. 28, p. 16)

Riggins argues that he is still entitled to nominal damages even without proof of an actual injury

sufficient to entitle him to compensatory or punitive damages.

For unexplained reasons, Defendants specifically excluded the section of § 1997e(e),

which creates an exception from the need to show a physical injury when the civil action

involves the commission of a sexual act. (Doc. 26, p. 16)  In full text, Subparagraph (e), which is

captioned "Limitation on recovery", provides that "[n]o Federal civil action may be brought by a

prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury

suffered while in custody without a prior showing of physical injury or the commission of a

sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). Thus, it appears

Defendants have raised their argument only as to Riggins' claims based on Sgt. Whittle's

assaults and threats.  Accordingly, to the extent that Defendants may have sought summary

judgment under the PLRA as to Riggins' Eighth Amendment claims based upon the sexual

assaults, the motion is **DENIED**.

"In an action pursuant to § 1983, a plaintiff may recover damages for monetary loss,

physical pain and suffering, mental and emotional distress, impairment of reputation, and

personal humiliation." *Thompson v. Sec'y, Florida Dep't of Corr.*, 551 F. Appx. 555, 556–557 (11th Cir. 2014) (citing *Slicker v. Jackson*, 215 F.3d 1225, 1231 (11th Cir. 2000)).  "But, '[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury....'" *Id.* at 557 (quoting 42 U.S.C. § 1997e(e)).  "To satisfy § 1997e(e), a prisoner must allege physical injury that is more than de minimis, but the injury need not be significant." *Id.* (citing *Harris v. Garner*, 190 F.3d 1279, 1282, 1286–87 (11th Cir.1999) (concluding that ordering a prisoner to "dry shave," without more, did not satisfy § 1997e(e)'s physical harm requirement), *reh'g en banc granted, vacated*, 197 F.3d 1059 (11th Cir.1999), *reinstated in relevant part*, 216 F.3d 970 (11th Cir. 2000) (en banc)").  Overall, "[c]ompensatory damages under § 1983 may be awarded only for actual injuries caused by the defendants' illegal conduct and cannot be based on the abstract value of the constitutional rights that were violated." *McKissick v. Comm'r, Georgia Dep't of Corr.*, 587 Fed. Appx. 567, 573–574 (11th Cir. 2014) (citing *Slicker v. Jackson*, 215 F.3d 1225, 1230–31 (11th Cir. 2000)).

As to Riggins' Eighth Amendment claims related to Sgt. Whittle's assaults and threats, Riggins' testified that it hurt when Sgt. Whittle slapped and choked him and that he was injured on his face and neck. (Doc. 28-1, p. 19-21)  *See Hollingsworth v. Thomas*, 2014 WL 2435763, at *5 (S.D. Ala. May 30, 2014) ("In determining whether Plaintiff suffered an injury that is greater than *de minimis,* the Court reviewed decisions from other courts that considered whether an injury is *de minimis* or not an injury at all. *See In re Bayside Prison Litigation,* 2010 U.S. Dist. LEXIS 124624, *18, 2010 WL 4916716 (D.N.J. November 18, 2010) (finding that the inmate's pain and swelling of the pinky finger for two days after the officer hit his left hand with a stick was a de minimis injury inasmuch as the swelling was only for a couple of days, and there was no lasting pain or physical distress or restriction even though the pinky finger was slightly

deformed); *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir.1997) (finding that a bruised ear which lasted for three days was a de *minimis* injury); *Nolin v. Isbell,* 207 F.3d 1253, 1258 n. 4 (11th Cir.2000) (bruises received during an arrest were a de *minimis* injury); *McDonald v. Neal,* CA No. 13–0128–CG–M, 2013 U.S. Dist. LEXIS 172822, 2013 WL 6410402 (S.D.Ala. Dec. 9, 2013) (finding the allegations of an officer poking the plaintiff with a nightstick, slapping him two to three times across the face, and shoving him into the wall did not present a physical injury); *Brown v. Croce,* 967 F.Supp. 101, 104 (S.D.N.Y.1997) (finding that two slaps to the face with no injury resulting were *de minimis* ); *Harris,* 190 F.3d at 1286–87 (finding a "dry shave" was not a physical injury that was more than *de minimis* ); *Mann v. McNeil,* 360 Fed. App'x 31, 32 (11th Cir.2010) (unpublished) (finding that "the injuries that [plaintiff] complain[ed] of— including the vague injuries to his back, the scrapes and marks on his knees and legs, the lack of personal items, the lapse of time in reordering medication, the window-cleaning assignment, and the discontinuance of his pass for showers twice a day—amount[ed] to *de minimis* physical injuries" thereby barring damages for mental anguish and suffering), *cert. denied,* 131 S.Ct. 517 (2010); *Mobley v. Grasco,* 2011 U.S. Dist. LEXIS 81136, *6–8, 2011 WL 3163159 (N.D.Fla. July 1, 2011) (finding the claim of "pain and suffering" did not allege an injury); *Osterback v. Johnson,* No.2003 U.S. Dist. LEXIS 25987, 2003 WL 25571396, at *6 (M.D. Fla. June 2, 2003) (finding the plaintiff's "slight weight loss (11 pounds), nausea, back pain, a sinus condition, appetite loss and headaches allegedly 'exacerbated by the poor living conditions' " did not satisfy § 1997e(e)'s physical injury requirement), *aff'd,* 112 Fed. App'x 4 (11th Cir.2004); *Waller v. Ray,* 2009 U.S. Dist. LEXIS 63810, 2009 WL 2232457, at *2 (W.D.Va.2009) (finding that the guard's pushing and shoving of an inmate was at the most *de minimis* discomfort); *see also Wilkins v. Gaddy,* 559 U.S. at 38, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive

force claim.") (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."))").

Viewing the facts in the light most favorable to the non-movant Riggins, and drawing all reasonable inferences in his favor, the Court finds that no jury could reasonably find that Riggins incurred a more than de minimis injury from the assault on October 31, 2014.[13]  Accordingly, Defendants' motion for summary judgment as to punitive and compensatory damages for Riggins' Eighth Amendment claims as they relate to Sgt. Whittle's assault is **GRANTED**.[14] However, the lack of evidence of a physical injury that is more than de minimis in connection with an Eighth Amendment claim would not preclude recovery of nominal damages. *Brooks v. Warden*, 800 F.3d 1295, 1298 (11th Cir. 2015).

### 9. State law claims

Defendants raised no argument as to the state law claims of negligence against Warden Myers, Capt. Fails and Sgt. Whittle and assault and battery against Sgt. Whittle.  Accordingly, no order is made as to these claims, and Count VI and VII remain for trial.

## IV. Conclusion

Upon consideration, and for the reasons set forth herein, Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part as follows:

  1)     Defendant Sgt. Whittle's motion for summary judgment based on qualified

---

[13] Riggins testified that Lt. Bolar refused his request to go to the Infirmary and that he did not ask any other supervisor. (Doc. 28-1, p. 20-21)  Consequently, there are no medical records to substantiate Riggins' allegations.

[14] Defendants did not file a reply to Riggins' response wherein he argues that he is entitled to nominal damages.  Therefore, Defendants appear to concede that Riggins may be entitled to nominal damages should he succeed in establishing that Sgt. Whittle violated his Eighth Amendment rights.

immunity is **DENIED**.

2)   Defendants Warden Myers, Capt. Fails' and Lt. Bolar's motion for summary judgment based on qualified immunity with respect to Riggins' claims regarding supervisory liability for Sgt. Whittle's physical assaults regarding the contraband cell phones and as to the sexual assault (Counts II, III, and IV) is **GRANTED**.

3)   Defendant Sgt. Whittle's motion for summary judgment on the merits as to Riggins' claims in Count I based upon the sexual assaults is **DENIED**. Defendant Sgt. Whittle did not move for summary judgment as to Riggins' claim based upon the physical assaults. Therefore, the claims alleged in Count I – that Sgt. Whittle facilitated the sexual assaults and that she physically assaulted Riggins in violation of his right to be free from cruel and unusual punishment - remain for trial.

4)   Defendants Warden Myers and Capt. Fails' motion for summary judgment as to Eleventh Amendment immunity from suit in their official capacity (Count V) is **GRANTED**.

5)   Defendants did not move for summary judgment as to Riggins' state law claims. Therefore, Counts VI and VII remain for trial.

6)   Defendants' motion for summary judgment based on Riggins' failure to meet the heightened pleading standards is **DENIED.**

7)   Defendants' motion for summary judgment based on Riggins' failure to establish standing is **DENIED**.

8)   Defendants' motion for summary judgment based on claims that rely on respondeat superior or vicarious liability is **GRANTED**.

9)   Defendants' motion for summary judgment based on the Prison Litigation Reform

Act is **GRANTED** as to punitive and compensatory damages for Riggins' Eighth

Amendment claims as they relate to Sgt. Whittle's assaults regarding the

contraband cell phones. However, Riggins may proceed on a claim for nominal

damages.  To the extent that Defendants seek summary judgment under the PLRA

as to Riggins' Eighth Amendment claims based upon the sexual assaults, the

motion is **DENIED**.


**DONE** and **ORDERED** this 21st day of July 2017.


                     **s / Kristi K DuBose**
                     **KRISTI K. DuBOSE**
                     **CHIEF UNITED STATES DISTRICT JUDGE**